IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

**AKIDA WILLIAMS**                                                            **MOVANT**

**V.**                                                                                    **NO.: 1:15CR111-GHD**

**UNITED STATES OF AMERICA**                                  **RESPONDENT**

## MEMORANDUM OPINION AND ORDER

Federal inmate Akida Williams ("Williams") comes before the Court on a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. The Government has responded to Williams' claims, and Williams has filed a reply. Having considered the pleadings and the record, along with the relevant law, the Court finds that the motion should be denied, for the reasons that follow.

### I. Background Facts and Procedural History

Between February 2015 and September 2015, Williams was part of a drug trafficking organization ("DTO") that operated in the Northern District of Mississippi. Williams, a California-based drug source supplier, mailed methamphetamine to Christopher Graham, the leader of the DTO, who, along with others, would then distribute the drugs locally. Proceeds from the sale of the methamphetamines would then be placed in Williams' bank accounts in sums less than $10,000. These accounts were often opened and maintained in the names of friends or relatives of Williams to avoid law enforcement detection. An investigation revealed that, in total, Williams distributed more than 13 kilograms of methamphetamine.

Williams was indicted on drug and money laundering charges. On September 14, 2016, with the assistance of appointed counsel Thomas C. Levidiotis, Akida Williams entered a guilty plea to one count of conspiracy to distribute and possess with intent to distribute 500 grams or

more of methamphetamine (Count 1) and one count of conspiracy to commit money laundering (Count 11). A Pre-Sentence Investigation Report ("PSR") was prepared for sentencing purposes. Williams' offenses were grouped, and his base offense level was calculated at a 38 because the calculation for Count 11 produced the higher offense level. PSR at ¶30-31. Williams received a 2-level enhancement for the money laundering count and a 3-level reduction for acceptance of responsibility, resulting in a total offense level of 37. *Id.* at ¶32, ¶¶38-40.

Based on his prior convictions, Williams' total criminal history score was calculated at 10, resulting in a criminal history score of 5. *Id.* at ¶49. However, he had been convicted of assault with a firearm in 1999 and distribution of a controlled substance and distribution of marijuana in 2012. *Id.* at ¶44, ¶46. Because he was over 18 years of age at the time he committed a controlled substance offense, and because he had at least two prior felony convictions of a either a crime of violence or a controlled substance offense, Williams qualified as a career offender under United States Sentencing Guideline ("Guideline") § 4B1.1(b). *Id.* at ¶37, ¶49. His criminal history was, therefore, 6. *Id.* at ¶49. Based on these calculations, the PSR recommended a Guideline range of 360 months to life for Count 1 and 240 months for Count 11. *Id.* at ¶76. Because the Guideline range exceeded the statutory maximum penalty for Count 11, the statutory maximum of 240 months became the Guideline sentence. *Id.*

On February 1, 2017, Williams was sentenced to 2 concurrent terms of 240 months' imprisonment and supervised release provisions of 5 years on Count 1 and 3 years on Count 11, to run concurrently. Doc. #395. A $ 200 special assessment fee was additionally ordered. *Id.* Williams did not appeal the judgment, but rather, filed the instant motion on or about February 7, 2018, alleging (1) that he received ineffective assistance of trial counsel due to counsel's failure to file substantive objections to the PSR and (2) that he was improperly classified as career offender under the Guidelines. Doc. #478.

2

## II. Legal Standard

After a defendant has been convicted and exhausted his appeal rights, a court may presume that "he stands fairly and finally convicted." *United States v. Frady*, 456 U.S. 152, 164 (1982). A motion brought pursuant to § 2255 is a "means of collateral attack on a federal sentence." *Cox v. Warden, Federal Detention Ctr.*, 911 F.2d 1111, 1113 (5th Cir. 1990) (citation omitted). There are four separate grounds upon which a federal prisoner may move to vacate, set aside, or correct a sentence under 28 U.S.C. § 2255: (1) the judgment was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the judgment; (3) the sentence exceeds the statutory maximum sentence; or (4) the judgment or sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). Collateral attack limits a movant's allegations to those of "constitutional or jurisdictional magnitude." *United States v. Samuels*, 59 F.3d 526, 528 (5th Cir. 1995) (citation omitted). Relief under § 2255 is reserved, therefore, for violations of "constitutional rights and for that narrow compass of other injury that could not have been raised on direct appeal and, would, if condoned, result in a complete miscarriage of justice." *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. 1981).

## III. Analysis

### A. Ineffective Assistance of Counsel

Williams claims that his trial counsel failed to file substantive objections to the PSR, which deprived him of the effective assistance of counsel. As a result, he claims, he was not afforded a fair and just sentence.

To make a substantial showing of the denial of his Sixth Amendment right to the reasonably effective assistance of counsel, a movant must satisfy the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires him to demonstrate "that counsel's performance was deficient," and that "the deficient performance prejudiced the

3

defense." *Strickland*, 466 U.S. at 687. To establish deficient performance, the movant "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-88. The court's scrutiny of counsel's performance must be "highly deferential." *Id.* at 689. To prove prejudice, the movant must demonstrate that the result of the proceedings would have been different if counsel had performed effectively. *Id.* at 694. The prejudice inquiry does not merely require that the movant raise the "possibility of a different outcome," but rather, it requires the movant to "demonstrate that the prejudice rendered sentencing 'fundamentally unfair or unreliable.'" *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999) (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)).

Williams claims that prior to his sentencing, his counsel advised him that his sentence would be enhanced because he qualified as a career offender under the Guidelines, and that upon learning this information, he communicated to counsel his belief that the PSR contained errors. Despite this warning, he claims, his trial counsel did not file any objections to the PSR and told Williams that he would not object to anything in the PSR.

The Court finds Williams cannot demonstrate any prejudice as a result of his counsel's failure to object to the PSR. First, had he not been classified a career offender, Williams' would have had a criminal history category of 5, resulting in a Guideline range of 324-405 months for Count 1. Therefore, the 240-month sentence this Court imposed was significantly less than the minimum Guideline sentence for that count. Second, Williams does not contest his 240-month sentence for Count 11, which was ordered to run concurrently with his sentence on Count 1. Therefore, Williams has failed to establish that but for his counsel's failure to object, he would have been sentenced to less prison time. *See United States v. Lewis*, 467 F. App'x 298, 299 (5th Cir. 2012) (holding attorney not ineffective for failing to raise meritless guideline objection); *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999) (holding attorney failure to raise

meritless argument cannot form basis of successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue). Relief on this issue is denied.

## B. Career Offender Classification

Williams was sentenced as a career offender because before he was convicted of the present offense, he was convicted of assault with a firearm in 1999 and distribution of a controlled substance and distribution of marijuana in 2012. Williams argues that neither of his prior drug convictions qualify as a "controlled substance offense" under § 4B1.1 after *Mathis v. United States*, 136 S. Ct. 2243 (2016) and its progeny, because he actually only pleaded guilty to transporting drugs, not distributing them.

Williams fails to show that the alleged error could not have been raised on direct appeal. Questions of constitutional or jurisdictional magnitude may not be raised for the first time on collateral review absent a showing of cause and prejudice. *United States v. Shaid*, 937 F.2d 228, 231-32 (5th Cir. 1992). Other types of error may be raised under § 2255 only if the movant demonstrates that the error could not have been raised on direct appeal and, if allowed, would result in a complete miscarriage of justice. *United States v. Pierce*, 959 F.2d 1297, 1301 (5th Cir. 1992). As the Court has already determined, Williams cannot demonstrate the requisite cause and prejudice, because he has not demonstrated that his sentence would have been shorter had counsel objected to the career offender designation. Moreover, technical application of the Guidelines does not raise a constitutional issue. *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992). Finally, the Court notes that the alleged error did not constitute a fundamental defect which inherently resulted in a complete miscarriage of justice. *United States v. Smith*, 844 F.2d 203, 206 (5th Cir. 1988) (quotation marks omitted). Therefore, a claim that the district court erroneously applied a career offender enhancement under the Guidelines fails to qualify as a

5

constitutional injury and is not otherwise cognizable in a § 2255 proceeding. *See United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999). Relief on this claim is denied.

### IV. Certificate of Appealability

This Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts. Williams must obtain a COA before he may appeal the denial of his § 2255 motion. 28 U.S.C. § 2253(c)(1)(B). A COA will issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For cases rejected on their merits, a movant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong" to warrant a COA. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (applying *Slack* to COA determination in § 2255 proceeding). To obtain a COA on a claim that has been rejected on procedural grounds, a movant must demonstrate "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. Based on the *Slack* criteria, the Court finds that a COA should not issue in this cause.

### V. Conclusion

For the reasons set forth herein, Williams' § 2255 motion [478] is **DENIED**, and a COA from this decision is **DENIED**. A final judgment consistent with this Memorandum Opinion and Order will enter today.

**SO ORDERED** this 7 day of June, 2018.

_____
**SENIOR U.S. DISTRICT JUDGE**